**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
222 N. Sepulveda Blvd., Suite 2222
El Segundo, California 90245
Tel: (310) 322-2220
Fax: (310) 322-2228

**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
733 Marsh Street, Suite 110
San Luis Obispo, California 93401
Tel: (805) 322-3412
Fax: (805) 322-3413

Attorneys for Plaintiff and the Classes

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH LITT, as an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WESTERN STONE & METAL CORP., a Colorado Corporation, dba Shane Co.; and DOES 1 through 10,<br><br>Defendants. | CASE NO. 3:14-cv-02804-PJH<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Phyllis J. Hamilton<br>Date: July 8, 2015<br>Time: 9:00 a.m.<br>Courtroom: 3 |

NOTICE IS HEREBY GIVEN that on Wednesday, July 8, 2015, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Phyllis J. Hamilton, Plaintiff Sarah Litt ("Plaintiff") as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e):

1. Finally certifying the Settlement Classes for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure

2. Granting final approval to the class action settlement based upon the terms set forth in the Settlement Agreement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

3. Appointing Plaintiff as Class Representative for settlement purposes;

4. Appointing Paul K. Haines and Fletcher W. Schmidt of Boren, Osher & Luftman LLP, and Hernaldo J. Baltodano of Baltodano & Baltodano LLP as Class Counsel for settlement purposes;

5. Entering final judgment in the form of the proposed Final Approval Order filed herewith.

///
///
///
///
///
///
///
///
///

2

1    This Motion is based upon this Notice, the attached Memorandum of Points

2  and Authorities, the supporting Declarations of Paul K. Haines, Hernaldo J.

3  Baltodano, Fletcher W. Schmidt, and Abel Morales and exhibits attached thereto,

4  the proposed Order, the Settlement Agreement, all other pleadings and papers on

5  file in this action, and any oral argument or other matter that may be considered by

6  the Court.

7                                              Respectfully submitted,

8  Dated:  June 24, 2015                       BOREN, OSHER & LUFTMAN LLP

9

10                          By:    _/s/Paul K. Haines_____

11                                 Paul K. Haines, Esq.
                                   Attorneys for Plaintiff and the Classes

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. FACTUAL SUMMARY .....................................................................................2

   A. Plaintiff's Claims ........................................................................................2

   B. This Litigation's Procedural History ..........................................................3

   C. The Parties' Discovery and Analysis.........................................................4

III. THIS SETTLEMENT WARRANTS FINAL APPROVAL ..............................5

   A. The Settlement Is Fair, Adequate, and Reasonable...................................6

      1. The Strength of Plaintiff's Case .......................................................7

      2. Risk, Expense, Complexity, and Duration of Further Litigation .....8

      3. Risk of Maintaining Class Action Status .........................................9

      4. Amount Offered in Settlement Is Reasonable Given the Realistic
         Value of the Claims In Light of the Litigation Risks......................9

      5. Discovery Completed and the Status of Proceedings ...................12

      6. The Experience and Views of Counsel ..........................................12

      7. The Reaction of the Class Members to the Proposed Settlement ..13

IV. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS
     PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED........13

V. THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS ...14

VI. CONCLUSION................................................................................................16

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431 (E.D. Cal., 2013)........11

4

*Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ......14

5

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...........................6

6

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)...............................................14

7

*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) .........................................5

8

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995) .........12

9

*In re Syncor ERISA litigation*, 516 F.3d 1095 (9th Cir. 2008) .................................6

10

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ..................9

11

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............6

12

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) .........................13

13

*Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468 (E.D. Cal. 2010)...............6

14

*National Rural Tele. Coop. v. DIRECTV, Inc.*

15

    221 F.R.D. 523 (C.D. Cal. 2004)...........................................................8, 13

16

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).........................6

17

*Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261 (D. Conn. 2002) .................................14

18

19

**Federal Statutes and Rules**

20

Fed. R. Civ. Proc. 23(e) ...........................................................................................5

21

22

**State Statutes and Rules**

23

Cal. Code Regs. § 13520 ..........................................................................................7

24

25

**Unpublished Cases**

26

*Casique v. ValleyCrest Landscape Development, Inc.*

27

    Case No. CV09-9114 GHK (SSx)

28

    (C.D. Cal. November 2, 2011)......................................................................10

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

*Gribble v. Cool Transports Inc.*
Case No. CV 06-04863 GAF SHX, 2008 WL 5281665
(C.D. Cal. December 15, 2008) ................................................... 13

*In re Portal Software, Inc. Securities Litig.*
Case No. C-03-5138 VRW, 2007 WL 4171201
(N.D. Cal. Nov. 26, 2007) ........................................................... 8

*Jaime v. Standard Parking Corp.*
Case No. CV08-04407 AHM (Rzx)
(C.D. Cal. June 22, 2011) ........................................................... 11

*Jankowski v. Castaldi*
Case No. 01CV0164 (SJF) (KAM), 2006 WL 118973
(E.D. N.Y. January 13, 2006) ..................................................... 14

*Mora v. Bimbo Bakeries USA, Inc.*
Case No. CV 10-3748 JAK (RZx)
(C.D. Cal. May 16, 2012) ........................................................... 11

*Schiller v. David's Bridal, Inc.*
Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001
(E.D. Cal. June 11, 2012) ..................................................... 11, 14

*Singer v. Becton Dickinson and Co.*
Case No. 08–CV–821–IEG (BLM), 2010 WL 2196104
(S.D. Cal., June 1, 2010)............................................................ 10

*Sorenson v. PetSmart, Inc.*
Case No. 2:06-CV-02674-JAM-DAD
(E.D. Cal. December 17, 2008) ................................................. 11

*Williams v. Centerplate, Inc.*
Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428
(S.D. Cal. August 26, 2013) ....................................................... 11

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

*Wren v. RGIS Inventory Specialists*

Case No. C-06-05778 JCS, 2011 WL 1230826

(N.D. Cal. April 1, 2011)....................................................................6

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Plaintiff Sarah Litt ("Plaintiff") seeks final approval of this class action settlement, on behalf of 1,392 non-exempt employees of Defendant Western Stone & Metal Corp. ("WSM").  This non-reversionary settlement (the "Settlement") provides for average payments of $1,193.90 to a class of 283 California employees (the "California Settlement Class") for alleged meal and rest period violations, unpaid overtime wages based on WSM's alleged miscalculation of the regular rate of pay, and derivative waiting time penalties.  This Settlement also compensates a nationwide class of approximately 1,109 members (the "Non-California Settlement Class") solely for allegedly unpaid overtime wages based on WSM's alleged regular rate miscalculation.  (Hereinafter, the California Settlement Class and Non-California Settlement Class are at times referred to collectively as the "Settlement Classes").  Moreover, this litigation resulted in WSM instituting meaningful policy reforms, including updating its written meal and rest period policies in California, and revising its policies for calculating the regular rate of pay at all locations nationwide.  Participating members agreed to a narrowly tailored release of only those claims that were actually valued as part of the Settlement, which for members of the Non-California Settlement Class consists solely of claims based on WSM's failure to include incentive compensation in the regular rate of pay for purposes of calculating overtime compensation.

In its April 2, 2015, order granting preliminary approval, this honorable Court concluded that the Settlement "falls within the range of reasonableness and, therefore, meets the requirements for preliminary approval." *See* Docket Entry ("DE") No. 34 at 2:6-8.  The Court certified the California Settlement Class under Rule 23(e), defined as: "All non-exempt employees of Western Stone & Metal Corp., who worked in California between June 17, 2010, and April 1, 2015." *See id.* at 2:12-13.  The Court also certified the Non-California Settlement Class under

1

Rule 23(e), defined as: "All non-exempt employees of Western Stone & Metal Corp., who worked outside of California between June 17, 2011, and November 8, 2014." *See id.* at 2:14-15.  The Settlement provides that all members who do not affirmatively opt-out of the Settlement will receive settlement payments.

Notice of the proposed Settlement was provided to the Settlement Classes via first class mail on April 15, 2015.   At the conclusion of the opt-out period, not a single member objected to the settlement, only one of the California Settlement Class members chose to opt-out, and only 44 Non-California Settlement Class members chose to opt-out, for an overall participation rate of 97%.  In light of the positive results achieved for the Settlement Classes and overwhelmingly positive response received from the Settlement Classes, Plaintiff respectfully requests that the Court grant final approval.

## II.   FACTUAL SUMMARY.

### A.   Plaintiff's Claims.

WSM is an independent jewelry company, operating 20 retail jewelry stores across the United States, including four stores in California.  Plaintiff claims that during the relevant time period, WSM paid various forms of bonuses and incentive pay to their hourly non-exempt employees, but failed to include the value of these forms of compensation in non-exempt employees' regular rates of pay, resulting in a company-wide underpayment of overtime wages under Federal law, as well as the laws of the various states in which WSM operates.  Additionally, Plaintiff claims that WSM's meal and rest period policies, which merely stated conclusorily that "all lunch hours and breaks are in accordance with Federal and State laws," did not adequately communicate to California employees their authorization and permission to take all statutorily-mandated meal and rest periods.  Because of these predicate violations, Plaintiff maintains WSM failed to comply with its final payment obligations, in violation of Labor Code § 203.

Although WSM acknowledged that its payroll practices had failed to

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

properly account for certain forms of incentive pay in employees' respective overtime rates of pay, WSM maintained that the gross amount of underpaid wages to all class members, both within California and nationwide totaled only $38,357.05. *See* DE No. 31 at 3:4-5 (explaining that WSM in fact calculated its own exposure as $3,158 less than the figure reached by Plaintiff, which was $41,515.05 nationwide). WSM further maintained that its good-faith belief that its payroll practices complied with all laws precluded the imposition of waiting time penalties since Plaintiff could not prove that WSM's alleged failure to pay all final wages at the time of separation was "willful." *See* Declaration of Paul K. Haines ("Haines Decl."), ¶ 15. WSM denies the remainder of Plaintiff's allegations, maintaining that it authorized and permitted all California employees to take all meal and rest periods required by California law, and that its timekeeping records proved that the vast majority of employees received compliant meal periods. *Id.* Furthermore, because employees did not record rest periods, WSM argued that proof of missed rest periods could only be made on an individual, not class-wide basis, thereby precluding class certification of Plaintiff's rest period claim. *Id.* WSM further claimed that it did not engage in any unfair business practices, and maintained that Plaintiff's claims were improper for class treatment under Rule 23 of the Federal Rules of Civil Procedure. *Id.*

**B.    This Litigation's Procedural History.**

On June 17, 2014, Plaintiff filed her class, collective and representative action complaint against WSM in the United States District Court for the Northern District of California, before the Honorable Nathanael M. Cousins, alleging overtime wage violations, meal and rest period violations, and derivative waiting time penalties. *See* DE No. 1. WSM filed its Answer on July 31, 2014. *See* DE No. 14. On August 18, 2014, the parties met and conferred, pursuant to Rule 26(f), regarding the claims and anticipated issues in the litigation. Haines Decl., ¶ 11. Following the conference of counsel, the parties reached an agreement to attend a

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

private class-wide mediation, and to stay formal discovery pending an informal data production in connection with mediation. *Id.*  On September 11, 2014, the case was reassigned to the Honorable Phyllis J. Hamilton. *See* DE No. 24.

After extensively reviewing the data produced by WSM, and retaining a data analysis professional to analyze the class-wide payroll and timekeeping data (*See* Section II(C), *infra*), the parties attended mediation with David Rotman in San Francisco on November 12, 2014.  Haines Decl., ¶ 14.  After a full day of negotiations, Mr. Rotman made a mediator's proposal for a class-wide resolution of all claims, which both parties accepted in principal, subject to entering into a to-be-negotiated long-form settlement agreement.  *Id.*  Over the next three months, the parties negotiated and drafted the long-form Settlement Agreement which was executed on February 27, 2015, and which was submitted to the Court for preliminary approval on February 27, 2015.  *See* DE No. 30.  On April 2, 2015, this Court granted preliminary approval. *See* DE No. 34.  Plaintiff now moves this Court for final approval.

### C.   The Parties' Discovery and Analysis.

In preparation for mediation, WSM provided Plaintiff with the complete weekly timekeeping and payroll data in electronic format for the *entire* putative class (not just a sampling), which showed the start and end date of each pay period worked by each putative class member, all hourly rates of pay, the number of regular, overtime and double-time hours worked by each employee on a weekly basis, and all bonuses, commissions and spiffs received.  Haines Decl., ¶ 11.  In total, the payroll data spanned 103,000 workweeks, 94% of the total weeks worked by the members of the Settlement Classes as of the date of mediation.  *Id.*  In addition, WSM produced the daily timekeeping records for a random sampling of approximately 15% of the California class members.  *Id.*  WSM also produced all applicable policies pertaining to the payment of incentive compensation and all

1 | policies regarding the challenged meal and rest period practices at issue in the

2 | lawsuit.  *Id.*

3 |       Plaintiff retained an economist with a Ph.D. to analyse all of the payroll and

4 | timecard data produced by WSM.  *Id.* at ¶ 13.  Plaintiff and her retained expert

5 | conducted a comprehensive analysis of the data, and were able to determine the

6 | average rates of pay in California and outside of California, the average total

7 | incentive compensation earned by class members inside and outside of California

8 | for each year during the class period, the total number of regular and overtime

9 | hours worked by each class member, and the total underpaid overtime wages for

10 | both the California and Non-California Settlement Classes.  *Id.*  Based on the data

11 | provided, Plaintiff was also able to estimate the total number of shifts worked of

12 | durations triggering first and second rest period entitlements, as well as the total

13 | number of meal period violations, where a meal period was either not recorded,

14 | was untimely (began after the end of the fifth hour of work), or was short (less than

15 | 30 minutes in duration).  *Id.*

16 |       In summary, the parties resolved this case only after exchanging their

17 | divergent views and analyses of the claims and defenses thereto, and exchanging a

18 | substantial amount of information and data over the course of several months.

19 | This extensive exchange allowed both parties to appreciate the uncertainty,

20 | expense, and risk involved in this litigation.

21 | **III.    THIS SETTLEMENT WARRANTS FINAL APPROVAL.**

22 |       A proposed class action settlement can be "settled, voluntarily dismissed, or

23 | compromised only with the court's approval."  *See* Fed. R. Civ. Proc. 23(e).  Thus,

24 | in order to approve this proposed class action settlement, this Court must conclude

25 | that the proposed settlement is "fair, adequate and reasonable," and is the product

26 | of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546

27 | F.3d 667, 674 (9th Cir. 2008).  According to the Ninth Circuit, "there is a strong

28 | judicial policy that favors settlement, particularly where complex class action

5

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

litigation is concerned." *See In re Syncor ERISA litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Therefore the Court should approve the release of FLSA claims if it appears to be the result of contested litigation to resolve a *bona fide* dispute between the parties. *Id.* at 1355. Because the factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23 assess the same factors, Plaintiff's analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim and Plaintiff will not repeat them here. *Compare Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).

## A. The Settlement Is Fair, Adequate, and Reasonable.

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," as required by Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court may consider some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; [1] and (8) the reaction of the class members to the proposed settlement. *See Rodriguez*, *supra*, 563 F.3d at

---

[1] This factor is not addressed because there is no governmental participant. *See, e.g., Wren v. RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826 at *10 (N.D. Cal. April 1, 2011) ("Because there is no governmental entity involved in this litigation, the seventh factor is inapplicable").

6

963.  Plaintiff addresses each of these factors below.

## 1.     The Strength of Plaintiff's Case.

While Plaintiff's claim for miscalculation of the regular rate of pay appeared to be strong both as to certification and the merits, this claim represented only a total underpayment of approximately $38,357.05, which Plaintiff recovered in full for both Settlement Classes.  Haines Decl., ¶ 15.  As to Plaintiff's other claims, although she steadfastly maintains that her claims are meritorious, Plaintiff acknowledges that she and the members of the Classes faced significant obstacles to certification and recovery.  *Id.*  For example, regarding Plaintiff's rest period claim, WSM argued that, despite Plaintiff's claim that the rest period policy contained within the employee handbook was unlawful because it did not clearly communicate employees' authorization and permission to meal and rest periods, all employees in California were apprised of their right to take a duty-free, 10 minute rest period for every four hours worked, or major fraction thereof, and that rest periods were in fact scheduled for employees each day on a whiteboard in the store manager's office.  *Id.*  WSM therefore argued that, because rest periods were not recorded, the fact of whether or not an employee received a first and/or second rest period during a given shift would require individualized fact inquiries that would doom class certification.  *Id.*  Regarding the meal period claim, WSM argued that the high compliance rate evidenced by the timekeeping records, upwards of 75%, evidenced that, although Plaintiff claimed the policy contained within the employee handbook was deficient, employees were in fact authorized and permitted to take all required meal periods, and that furthermore, this could even be evidence of a high compliance rate as to rest periods as well.  *Id.*

WSM also asserted that it possessed strong defenses to the derivative waiting time penalties, since there existed a good-faith dispute as to the allegedly unpaid wages.  *See, e.g.,* Cal. Code Regs. § 13520 (a good-faith dispute exists to a claim for waiting time penalties "when an employer presents a defense, based in

7

law or fact which, if successful, would preclude any recovery on the part of the employee.  The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); Haines Decl., ¶ 15.

Despite WSM's defenses, however, Plaintiff secured a substantial recovery for the Settlement Classes.  This factor therefore supports final approval.  Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)(internal quotations omitted).

## 2.   Risk, Expense, Complexity, and Duration of Further Litigation.

This factor, too, supports final approval because although the parties had engaged in a significant amount of investigation, legal research and analysis, informal discovery, and class-wide data analysis, the parties had not yet commenced formal written or deposition discovery. *See* Haines Decl., ¶ 12. Plaintiff intended to depose WSM's FRCP 30(b)(6) witnesses on all topics related to WSM's policies for provision of incentive pay to non-exempt employees, calculation of the regular rate of pay, and meal and rest period practices.  *Id*. Plaintiff anticipated that WSM would likewise depose Plaintiff if mediation was unsuccessful, and potentially move for summary adjudication on all or some of the claims.  *Id*.  Moreover, preparation for class certification and a trial remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiff and/or adverse summary judgment ruling.  *Id*.  As a result, the parties would incur considerably more attorney's fees and costs through trial.  *Id*.  This settlement avoids those risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Therefore, this factor supports final approval.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.      Risk of Maintaining Class Action Status.**

Plaintiff had not yet filed her motion for class and conditional certification when the parties reached this proposed class-wide resolution.  Even if the Court had certified any claims, Plaintiff still faced the risk of decertification by WSM.  Haines Decl., ¶ 15.  Absent settlement, there was a risk that there would not be a certified class at the time of trial.  Thus, this factor, too, supports final approval.

**4.      Amount Offered in Settlement Is Reasonable Given the Realistic Value of the Claims In Light of the Litigation Risks.**

Plaintiff predicted that her realistic total recovery for the California Settlement Class would be approximately $484,368, and approximately $48,228 for the Non-California Settlement Class, for a combined total of roughly $535,596.  *See* DE No. 30 at 14:2-6.  The proposed settlement of $650,000 therefore represents approximately 121% of Plaintiff's reasonably forecasted recovery.  *See* DE No. 30.  Additionally, the 15% of the Net Settlement Amount to be allocated to the Non-California Settlement Class represents between 93% to 103% of the maximum possible recovery for Non-California members, inclusive of liquidated damages, which were not guaranteed.  *See* DE No. 30 at 11:3-6 and DE No. 31 at 3:5-10.  *See e.g., Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotations omitted).

In addition to the monetary recovery, as a direct result of this lawsuit, WSM unilaterally agreed to meaningful non-monetary policy changes that will help ensure the prompt payment of all overtime wages (by including all non-discretionary pay in the calculation of the regular rate of pay) and updated its meal and rest period policies, which had not been updated since 1993, to facilitate the provision of meal and rest periods that comply with California law for all current

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and future hourly non-exempt employees in California.  *See* Haines Decl., ¶ 16. This meaningful non-monetary relief also supports approval of the Settlement. *Singer v. Becton Dickinson and Co.*, Case No. 08–CV–821–IEG (BLM), 2010 WL 2196104 at *5 (S.D. Cal., June 1, 2010) ("Accordingly, the Court finds the amount offered in settlement and the non-monetary benefits to the class members weigh in favor of granting final approval of the settlement.").

Pursuant to the terms of the Settlement, 85% of the Net Settlement Amount ("NSA") was allocated to the California Settlement Class, with 35% of this amount being allocated to former employees as consideration for their release of waiting time penalty claims.  *See* DE No. 30-2 (Settlement Agreement) at § 6.B.  The remaining 15% of the NSA was allocated to all members of the Non-California Settlement Class.  *Id.*  Pursuant to this division of funds, the Non-California Settlement Class members will receive average payments of $53.76, which, as noted above and in Plaintiff's Motion for Preliminary Approval, has been calculated to represent the maximum potential recovery based on their released claims.  *See* Declaration of Abel Morales ("Morales Decl."), ¶ 7; DE No. 30 at 11:3-6.   The average settlement payment to the members of the California Settlement Class is $1,193.90.[2]  Morales Decl., ¶ 8.  This average amount exceeds other similar wage and hour class action settlements involving similar-wage workers.  *See, e.g., Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final approval of

---

[2]  This average amount has decreased slightly from the projected $1,390 average amount reported by Plaintiff in connection with her Motion for Preliminary Approval as a result of the class size increasing marginally between the date on which Plaintiff calculated the average projected payment amounts and the date of preliminary approval.  Haines Decl., ¶ 17.  Although the parties agreed to an escalator clause in the Settlement Agreement, the marginal increase in class size was not large enough to trigger the escalator clause.  *Id.*; *see also* DE No. 30-2 (Settlement Agreement) at § 11.D.3.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

class action settlement of California minimum and overtime wage claims, meal and rest break claims, and related penalty claims where average recovery to Settlement Class members was estimated at $345); *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (granting final approval of class action settlement of California minimum and overtime wage claims, meal and rest break claims, and related penalty claims based on average settlement class member recovery of $462.22); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx) (C.D. Cal. May 16, 2012) (granting final approval of settlement of meal and rest break class action claims where average recovery was $561.58); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement of meal, rest and related penalty claims approved where average class member recovery was approximately $60)*; Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 447 (E.D. Cal., 2013) (wage and hour class action settlement of $1,290,000 for 1,837 hourly employees based on overtime wage, meal and rest period, and related penalty claims yielded maximum settlement payment of $922.29 and average settlement payment of $601.91); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78.  Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of minimum wage, overtime wage, and meal and rest break class action settlement where average recovery for each class member was approximately $108).  Thus, this factor weighs in favor of final approval.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 5.   Discovery Completed and the Status of Proceedings.

As detailed above in Section II, *supra*, and in Plaintiff's Motion for Preliminary Approval, the parties engaged in a significant amount of informal class-wide discovery and analysis.  Prior to mediating this case, Plaintiff reviewed and analyzed, with the assistance of a retained economist with a Ph.D., payroll data for the entire putative class reflecting approximately 94% of the total class payroll data as of the date of mediation, and significant additional daily timekeeping records representing approximately 15% of the daily timekeeping records for the California Settlement Class.  *See* Haines Decl., ¶¶ 11 &13.  WSM also produced all applicable written policies pertaining to incentive compensation, overtime practices, and meal and rest period policies.  Thus, this factor also supports final approval.  *Id.* at ¶ 11.

### 6.   The Experience and Views of Counsel.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, Plaintiff is represented by experienced wage and hour class action counsel who collectively possess more than two decades of plaintiff- and defense-side wage and hour class action experience litigating claims alleging overtime, minimum wage, meal and rest period, and related wage statement and final payment violations.  *See* Haines Decl., ¶¶ 2-9; Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), ¶¶ 2-11; Declaration of Fletcher W. Schmidt ("Schmidt Decl."), ¶¶ 2-7.  Class Counsel have been certified as Class Counsel in numerous other cases alleging claims similar to those at issue in this litigation.  *Id.* Class Counsel fully evaluated the strengths and weaknesses of Plaintiff's claims, both as to class certification and the merits, and believe that the proposed Settlement is an excellent result for the Settlement Classes.  *See* Baltodano Decl. ¶ 13; Schmidt Decl., ¶ 8; Haines Decl., ¶ 10.  This factor therefore strongly supports

12

final approval. *See, e.g., Gribble v. Cool Transports Inc.*, Case No. CV 06-04863 GAF SHX, 2008 WL 5281665 at *9 (C.D. Cal. December 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most likely acquainted with the facts of the underlying litigation.").

**7.     The Reaction of the Class Members to the Proposed Settlement.**

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *See National Rural Tele. Coop., supra*, 221 F.R.D. at 529.  Here, the response to the Settlement has been overwhelmingly positive.  Notably, not a single class member filed an objection to the proposed settlement after notice was provided to the 1,436 members of the Settlement Classes informing them about the terms of the proposed settlement, their estimated individual settlement payout and rights under the settlement, the amounts sought by Class Counsel in attorneys' fees and costs, and the amount sought by the Class Representative as an enhancement award. Morales Decl., ¶ 5.  Moreover, only a single member of the California Settlement Class and only 44 members of the Non-California Settlement Class have elected to exclude themselves from the Settlement, for a participation rate of approximately 97%.  *Id.* at ¶¶ 7-8.  This factor therefor also weighs strongly in favor of final approval.

## IV.     THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED.

In its April 2, 2015 order granting preliminary approval, this Court certified the Settlement Classes, as defined in Section I, *supra*, for settlement purposes only. *See* DE No. 34 at 2:11-16.  The Court found that the Settlement Classes met the

requirements of Rule 23(a) and Rule 23(b)(3).[3]  *Id.* at 2:17-20.  Because circumstances have not changed, and for the reasons set forth in her motion for preliminary approval (*See* DE No. 30), Plaintiff requests that the Court finally certify the Settlement Classes for settlement purposes under Rule 23(e).  *See Schiller, supra*, 2012 WL 2117001 at *8 ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

## V.   THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS.

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).   Here, the parties engaged CPT Group, Inc. ("CPT"), an experienced third-party settlement administrator, to mail the Class Notice and related forms to settlement class members. *See* DE No. 30-4 at ¶ 2.

---

[3]  As fully briefed in Plaintiff's Motion for Preliminary Approval, although her Complaint pled a claim under the FLSA, Plaintiff's First Amended Complaint, which was filed on April 7, 2015 pursuant to this Court's Order, converted the FLSA claim to a claim for unpaid overtime wages under state statutory and common law theories. *See* DE Nos. 30, 34 & 35. Therefore, both Settlement Classes have been settled as Rule 23 "opt-out" classes, resulting in a participation rate of 97%, which is much higher than the rates generally found in opt-in settlements under the FLSA.  *See, e.g., Scott v. Aetna Servs., Inc*., 210 F.R.D. 261, 266 (D. Conn. 2002) (7.8% opt-in rate for FLSA class); *Jankowski v. Castaldi,* Case No. 01CV0164 (SJF) (KAM), 2006 WL 118973 at *2 (E.D. N.Y. January 13, 2006) (8.9% opt-in rate for FLSA class).

On April 15, 2015, and via First Class mail, CPT mailed the Class Notice and Exclusion Form to 1,436 members of the Settlement Classes. *See* DE No. 30-4 at ¶¶ 4-7.  The mailing addresses contained in the class list were processed and updated using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *See id.* at ¶ 5.  The NCOA contains requested changes of address filed with the U.S. Postal Service. *Id.*  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packet.  *Id.*

The Class Notice contained information and explanations about the claims in the litigation and the terms of the settlement, the rights and release of claims under the settlement, the right to object to the settlement, the right to opt-out of the settlement, and the calculation of settlement shares, including estimated individual settlement payment amounts.  *See* DE No. 30-4 at ¶ 7, and Ex. A.  The notice also informed the Settlement Classes of the June 15, 2015 deadline for objecting to the settlement or opting out, and informed them of the date, time, and location of the July 8, 2015, final approval hearing. *Id.*

As of June 22, 2015, 81 notice packets had been returned by the post office. Morales Decl., ¶ 3.  73 notice packets were re-mailed to an updated address, either as a result of an updated address being located or at the request of the Class Member. *Id.* at ¶ 4.  Ultimately, only 20 notice packets were deemed undeliverable.[4]  *Id*. at ¶ 4.   Not a single member objected to the settlement, and

---

[4]  Following final approval and funding of the settlement by WSM, CPT will issue checks for these 20 individuals at the same time that the checks are mailed to the participating members.  Morales Decl., ¶ 4.  Pursuant to the terms of the Settlement, these checks will remain valid for 180 days in the event that the individuals are located or come forward.  *See* DE No. 30-2 (Settlement Agreement) at § 6.F.  If they have still not been located at the expiration of the 180 days, their checks will be paid to the *cy pres* designee, Legal Aid Society—Employment Law Center.  *See id* at § 6.H.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

only 45 total members  opted out of the settlement (approximately 3%). *See* Morales Decl., ¶¶ 5-8.  For these reasons, Plaintiff submits that the notice procedure implemented for this settlement meets the requirements of due process, and requests that the Court approve the payment of $25,000 to CPT for administering the settlement. *See* Morales Decl., ¶ 9.

## VI.   <u>CONCLUSION.</u>

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant this motion and enter the order granting final approval.

Dated:  June 24, 2015

Respectfully submitted,

BOREN, OSHER & LUFTMAN LLP

By:    _/s/Paul K. Haines_____
Paul K. Haines, Esq.
Attorneys for Plaintiff and the Classes

16